<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

RASHON SAPP,

              Plaintiff,

   v.

TRENTON BOARD OF EDUCATION *et al.*,

              Defendants.

</td>
<td>

Civil Action No. 24-10360 (GC) (JTQ)

<u>**MEMORANDUM OPINION**</u>

</td>
</tr>
</table>

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendants Trenton Board of Education, Trenton Board of Education General Counsel James Rolle, Jr., Nadia Ramcharan, and Aaron Brooks's unopposed Motion to Dismiss *pro se*[1] Plaintiff Rashon Sapp's Second Amended Complaint (SAC) (ECF No. 15) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).[2] (ECF No. 16.)  The Court has carefully reviewed Defendants' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED**.

---

[1]    A court in this district previously entered a Preclusion Order against Plaintiff in light of his "continuous, repetitious, and vexatious lawsuits."  *See Sapp v. Mercer Cnty. Municipality*, Civ. No. 21-13038, at ECF No. 4 (D.N.J. July 6, 2021).

[2]    The Court considers the merits of Defendants' Motion to Dismiss even though it is unopposed. *See Royal v. Macy's Corp.*, Civ. No. 21-4439, 2022 WL 1500553, at *1 n.2 (E.D. Pa. May 11, 2022) ("The Third Circuit has held that motions to dismiss should not be granted solely because they are unopposed.") (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)).  Although Plaintiff filed an opposition to Defendants' Motion to Dismiss Plaintiff's initial Complaint, (ECF No. 7), Plaintiff simultaneously filed an Amended Complaint, (ECF No. 6).  The Court thereafter consolidated this matter with two other similar cases filed by Plaintiff and directed Plaintiff to file a consolidated Second Amended Complaint.  (ECF No. 14.)

## I.   BACKGROUND

### A.   Factual Background[3]

Plaintiff has joint legal custody of his son, who was in fourth grade at the time of the Complaint.  (ECF No. 15 ¶¶ 1-2.)   Plaintiff claims that Defendants—the Trenton Board of Education and three of its employees—violated Plaintiff's rights by denying Plaintiff's request to pick up his son from school for Muslim religious observances on Fridays.  (*See generally id.*) According to Plaintiff, as a practicing Muslim the Muslim Holy Book designates Friday as a "Day of Assembly" in which Muslims are to "leave off business" and join in prayer.  (*Id.* ¶ 3.)  Thus, every Friday at noon, Plaintiff and his son join with other Muslim people for sermon and prayer. (*Id.* ¶ 4.)

After completing third grade at a different school, Plaintiff's son began fourth grade at Thomas Jefferson Intermediate School in Trenton, New Jersey.  (*Id.* ¶ 2.)  On the first Friday of the 2024-25 school year, Plaintiff picked his son up at noon—two-and-a-half hours early—for prayer.  (*Id.* ¶¶ 2, 4, 11, 39.)  No one at the school raised an issue with this, and Plaintiff did the same thing the next Friday.  (*Id.* ¶ 4.)  That second Friday, Plaintiff spoke with the school's principal, Defendant Ramcharan.  Plaintiff explained to Ramcharan that he would be picking up his son early from school for prayer every Friday.  (*Id.* ¶ 5.)  Plaintiff also offered to write a letter, if needed.  (*Id.*)  According to Plaintiff, Ramcharan responded that "she would need to confer with the school manual on the proper procedures," but she let Plaintiff leave with his son.  (*Id.*)  Plaintiff followed up by sending a letter to Ramcharan stating that he would be picking his son up from

---

3   On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

school for prayer each Friday between 12:00 p.m. and 1:00 p.m. (*Id.* ¶ 6.) In the letter, Plaintiff also requested to have his son's teachers prepare any assignments that would be missed. (*Id.* ¶ 7.)

When Plaintiff went to pick his son up from school early the next Friday, a security guard told Plaintiff that he could not pick up his son early. (*Id.* ¶ 8.) Plaintiff waited to speak with Ramcharan, who told Plaintiff that Jamasja Barber[4]—Plaintiff's son's mother—informed her that Plaintiff could only pick their son up on Mondays and Wednesdays. (*Id.* ¶ 9.) Plaintiff told Ramcharan that she was relying on outdated information. (*Id.* ¶ 10.) According to Plaintiff, Ramcharan referred to a paper she was holding during the conversation and said "[w]ell mom brought in this paper, so until we see yours, I cannot let him leave." (*Id.*) Plaintiff then went to the courthouse "to get a copy of the most recent court order," and he returned to the school later that day. (*Id.*)

Upon returning to the school, Plaintiff again spoke with Ramcharan. Plaintiff alleges that Ramcharan looked at the court order outlining Plaintiff's parenting time—Mondays, Wednesdays, and Fridays—and said "[w]ell, [h]e can pray here in school." (*See id.* ¶ 11.) Ramcharan also indicated that two-and-a-half hours every week from school was too much time for Plaintiff's son to miss. (*Id.*) Plaintiff told Ramcharan he would sue her. (*Id.*) That same day, Plaintiff filed a complaint with the New Jersey Department of Education. (*Id.* ¶ 12.) Three days later, Plaintiff filed a lawsuit against Ramcharan in New Jersey state court. (*Id.*)

The following Monday, September 23, Plaintiff returned to the school with two officers from the Trenton Police Department. (*Id.* ¶ 14.) The officers "escorted" Plaintiff to Ramcharan's office, where Defendant Brooks, the school's vice principal, was also present. (*Id.*) Plaintiff asked

---

[4] Although Barber is listed as a Defendant on the docket, the SAC asserts no claims against her. The same is true for James Earle, Superintendent of Trenton Public Schools.

3

Ramcharan about why his religious request had been denied, to which Ramcharan responded "[t]he Board will be sending it to you." (*Id.* ¶¶ 15-16.)

Two days later, on Wednesday, September 25, Plaintiff's son was suspended from school. (*Id.* ¶ 18.) Plaintiff claims that Ramcharan knew that Wednesdays (along with Mondays and Fridays) were his parenting days, as they were listed on the restraining order between Barber and Plaintiff that was provided to Ramcharan. (*Id.* ¶ 19.) Nevertheless, Plaintiff alleges that "intentionally to spite" him, Ramcharan called Barber to pick up their son. (*Id.*) Upon learning that Ramcharan called Barber instead of him, Plaintiff called the Trenton Police Department's non-emergency line to report a bias crime. (*Id.* ¶ 20.)

Plaintiff also went to the school, where he saw Brooks outside. (*Id.* ¶ 21.) Plaintiff told Brooks that he had called the police, and Plaintiff explained the situation with Ramcharan to Brooks. (*Id.* ¶¶ 22-24.) Brooks told Plaintiff that Ramcharan did not call Barber. (*Id.* ¶ 24.) Rather, Brooks said he had mistakenly called Barber, and he promised Plaintiff that he would call him on Mondays, Wednesdays, and Fridays going forward. (*Id.* ¶¶ 24-25.) Satisfied with this response, Plaintiff called the Trenton Police Department to withdraw his bias crime complaint. (*Id.* ¶¶ 24-25.) Brooks also told Plaintiff that there would be a meeting on Friday, when Plaintiff's son was scheduled to return from his suspension. (*Id.* ¶ 26.)

Later that day, Plaintiff contacted Barber, presumably to discuss the preceding events. Barber responded: "Rashon, I took the court order to the school because it [] raised concerns about [our son] leaving school early two Fridays in a row when I had no idea of it and it's not ok." (*Id.* ¶¶ 27-28.)

Plaintiff arrived at the school on Friday, September 27 at 8 a.m. for the meeting. (*Id.* ¶ 31.) Plaintiff states that he assumed the meeting would start at 8 a.m. (*Id.*) However, Brooks informed

Plaintiff that the meeting was actually scheduled for 9 a.m. (*Id.*) Plaintiff left the school and came back at around 8:50 a.m. (*Id.* ¶ 32.) When Plaintiff returned, a security guard told Plaintiff that he could not enter the building because the school was on lockdown. (*Id.*) Plaintiff called the Trenton Police emergency line to report a bias crime. (*Id.*)

While Plaintiff was waiting outside of the school, he saw other individuals being let in by security. (*Id.* ¶ 33.) And when Barber arrived, security "immediately let her in the building." (*Id.* ¶ 34.) Plaintiff waited outside for the police to arrive. (*Id.* ¶ 35.) Eventually, the same two officers that had "escorted" Plaintiff to his meeting with Ramcharan arrived at the school. (*Id.*) The officers told Plaintiff: "You have to wait, because the school called first." (*Id.* ¶ 36.) Another officer arrived at the school and walked past Plaintiff into the building. (*Id.* ¶ 37.) Plaintiff alleges that "Ms. Ramcharan, Mr. Brooks, Ms. Barber and the 3 police officers conducted a private meeting" inside the school. (*Id.*)

Plaintiff writes that while he was outside, "something told me to leave because they are planning to do something evil to you." (*Id.* ¶ 38.) Plaintiff went home, and twenty minutes later he received a hand-delivered letter notifying him that he was banned from all Trenton Board of Education buildings. The letter reads as follows:

> Effective[] immediately and until further notice, you are prohibited from entering any Trenton Board of Education building for any reason, including any sporting events. You are expected to make alternative arrangements to pick-up and drop off your child. If you believe you need to be present at the school location for any reason, you must receive prior approval from the building principal before entry and you may enter only for the limited purpose that entry was granted. If you are found to be on school grounds without the necessary approval, you will be deemed a trespasser, removed from the premises, and the police will be called.

(*Id.*) The letter was signed by Defendant Rolle, Jr., the general counsel of the Trenton Board of Education. (*Id.*)

Forty minutes after receiving this letter, Plaintiff received notice that Barber had sought an emergent hearing in New Jersey state court. (*Id.* ¶ 39.) Barber's application stated as follows:

> Mr. Sapp is not following the court ordered parenting time by requesting to pick [his son] up from school every Friday, [h]e has also been sending harassing messages. Mr. Sapp has been up to Jefferson Elementary during school hours multiple times harassing the principal and school staff. Mr. Sapp has also served multiple civil lawsuits to the principal. He told [the] principal to "Google me". School time is 8am to 2:30pm. He is also showing signs of mental unstableness. I am requesting to amend the order and change pickup and drop-off schedule. I also do not want any contact. There is also a letter written by [the] school's lawyer [not] permitting any contact/being on TPS grounds.

(*Id.*) Plaintiff does not state what the outcome of the emergent hearing was, but he alleges that school staff were present at the courthouse during the hearing, and that "Ramcharan went with Ms. Barber to family court to file these bogus claims." (*Id.* ¶ 40.)

### B.    Procedural Background

This matter began as three separate cases—two initially filed by Plaintiff in New Jersey state court (Civ. Nos. 24-10360 and 24-10601), and one filed by Plaintiff in federal court (Civ. No. 24-10915). Defendants removed the state court cases to this Court and thereafter sought to consolidate all three cases. (ECF No. 9.) Given that all three cases involve common questions of law and fact, the Court granted the Motion to Consolidate, designated the instant case the lead case, and closed the other cases. (ECF No. 13.) The Court subsequently directed Plaintiff to file a consolidated amended complaint against all Defendants. (ECF No. 14.)

On April 1, 2025, Plaintiff filed the SAC. In the SAC, Plaintiff asserts nine causes of action: deprivation of rights under 42 U.S.C. § 1983 (Count One); gross negligence (Count Two); "Violation of Due Process Clause (14th Amendment)" (Count Three); "Violation of 1st Amendment (14th Amendment)" (Count Four); retaliation (Count Five); "Defamation (Slander & Libel)" (Count Six); intentional interference with contractual relations (Count Seven); intentional

infliction of emotional distress (Count Eight); and sex discrimination under 42 U.S.C. § 5891 (Count Nine).[5]  On April 22, 2025, Defendants moved to dismiss the SAC.  (ECF No. 16.)  The Court subsequently directed Defendants to submit a supplemental brief on the merits of Plaintiff's First Amendment claim (Count Four), to the extent such a claim could be construed as being asserted against the individual Defendants in their personal capacities under Section 1983.  (ECF Nos. 17, 18.)  The Court permitted Plaintiff to file a responsive supplemental brief, but he declined to do so.

## II.    <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), courts "'accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (internal quotations omitted) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "'A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (internal quotations omitted) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim[.]"  *In re Plavix Mktg.,*

---

[5]    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

*Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

Rule 8(a) does not require a complaint to contain detailed factual allegations. Still, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("Rule 8 requires a 'showing,' rather than a blanket assertion, of entitlement to relief.") (citation and some quotation marks omitted). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see, e.g.*, *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Though "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d. Cir 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' . . . keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing Fed. R. Civ. P. 8(f)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013)

8

(quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## III.    DISCUSSION

### A.    Federal Constitutional Claims

In the SAC, Plaintiff brings three claims to redress purported violations of his constitutional rights (Counts One, Three, and Four). To the extent Plaintiff does not specify a cause of action for these claims, the Court construes Plaintiff's claims as arising under 42 U.S.C. § 1983. *See Miller v. Brady*, 639 F. App'x 827, 829 n.1 (3d Cir. 2016) (construing *pro se* plaintiff's civil rights claims as arising under § 1983). To obtain relief under Section 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

As an initial matter, Defendants argue that Plaintiff's claims seeking to hold them liable in their official capacities must fail because Plaintiff does not allege that Defendants acted pursuant to a custom or policy. (ECF No. 16-1 at 8.)[6] Plaintiff does not state whether he is seeking to hold Defendants liable in their official or personal capacities (or both). (*See generally* ECF No. 15.) In situations involving similarly ambiguous pleadings, "[t]he Third Circuit instructs district courts to

---

[6]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

look at the complaint and the course of proceedings to determine whether the plaintiff has sued the defendants in their individual capacities, official capacities, or both." *Est. of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 289 n.2 (E.D. Pa. 2015) (citing *Melo v. Hafer*, 912 F.2d 628, 635-36 (3d Cir.1990)). "'The underlying inquiry . . . is whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.'" *Sammut v. Valenzano Winery LLC*, Civ. No. 18-16650, 2019 WL 2498767, at *3 (D.N.J. June 17, 2019) (quoting *Casilla v. N.J. State Prison*, Civ. No. 05-4590, 2006 WL 2534416, at *7 n.3 (D.N.J. Aug. 31, 2006)). "Factors relevant to this analysis include 'the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint[.]" *Casilla*, 2006 WL 2534416, at *7 n.3 (citation omitted).

Here, Plaintiff seeks punitive damages (among other relief) for the alleged constitutional violations in which the individual Defendants were personally involved. (ECF No. 15 ¶ 80.) However, "punitive damages are not available against municipal employees when they are sued in their official capacities." *Clark v. Bd. of Educ. of Franklin Twp. Pub. Sch.*, Civ. No. 06-2736, 2009 WL 1586940, at *12 (D.N.J. June 4, 2009). The Court therefore construes Plaintiff as asserting both individual and official capacity claims. *See Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007) ("We have . . . resolved doubts about the capacity in which defendants were sued in favor of a plaintiff, and assumed he sued them in their personal capacities, where the plaintiff sought punitive damages.") (citing *Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988)); *N.J. Chinese Cmty. Ctr. v. McAleer*, Civ. No. 21-08320, 2022 WL 3403297, at *7 n.5 (D.N.J. Aug. 15, 2022) (construing complaint as asserting individual capacity claims against official where official capacity claims were barred by sovereign immunity); *Est. of Tyler ex rel. Floyd*, 108 F. Supp. 3d at 289 n.2 ("[A] plaintiff's request for punitive and compensatory damages from individual

10

defendants is indicative of the plaintiff's intent to sue defendants in their individual capacities."). Such a liberal construction is particularly appropriate because Plaintiff is proceeding *pro se*. *See Casilla*, 2006 WL 2534416, at *7 n.3 ("[E]mploying the course of proceedings test, and in light of my obligation to liberally construe the pleadings of a *pro se* plaintiff, . . .  I will consider [the p]laintiff's [c]omplaint to assert a claim against [the d]efendant in his individual capacity as well as in his official capacity.") (internal citation omitted).

Nevertheless, to the extent Plaintiff is suing Rolle, Jr., Ramcharan, and Brooks in their official capacities, the Court agrees that these claims fail because Plaintiff has not alleged that they acted pursuant to a custom or policy for liability to attach under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See Doe v. Hillsborough Twp. Bd. of Educ.*, Civ. No. 23-22597, 2024 WL 4025865, at *8 (D.N.J. Aug. 30, 2024) ("To adequately plead a claim under *Monell*, the plaintiff 'must identify a custom or policy, and specify what exactly that custom or policy was.'") (citation omitted); *McAndrew v. Northumberland Cnty.*, Civ. No. 22-00834, 2024 WL 184434, at *3 (M.D. Pa. Jan. 17, 2024) ("'A municipality and its officials acting in their official capacities can be sued directly under § 1983 only if an action pursuant to a municipal policy, practice or custom directly causes a constitutional tort.'") (citation omitted).

With regards to Plaintiff's individual capacity claims, Defendants argue that Plaintiff's claims must be dismissed as conclusory and lacking sufficient factual support.  (ECF No. 16-1 at 5.)  The Court addresses each of Plaintiff's constitutional claims below.

### 1.    *Deprivation of Rights Under 42 U.S.C. § 1983 (Count One)*

Plaintiff alleges that Defendants Rolle, Jr., Ramcharan, and Brooks, "acting under the color of law, engaged in actions that caused [Plaintiff], a citizen of the United States to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution."  (ECF No. 15 ¶¶ 43-45.)  The Court agrees with Defendants that this claim is deficient.

11

"Section 1983 does not create substantive rights. Rather, Section 1983 provides an avenue of recovery for the deprivation of established constitutional or statutory rights." *Green v. City of Paterson*, 971 F. Supp. 891, 900 (D.N.J. 1997). Here, Plaintiff does not specify the rights, privileges, or immunities Defendants deprived him of. Plaintiff's "deprivation of rights" claim cannot proceed without an underlying constitutional violation. *See Innisfree Found., Inc. v. N.J. Dep't of Educ.*, Civ. No. 21-17672, 2023 WL 2158926, at *9 (D.N.J. Feb. 21, 2023) ("Plaintiff does not purport to tie its § 1983 claim to any other federal right or law and thus its § 1983 claim must be dismissed."); *Bahgat v. Twp. of E. Brunswick*, Civ. No. 16-1827, 2019 WL 2315031, at *5 (D.N.J. May 31, 2019), *aff'd*, 821 F. App'x 134 (3d Cir. 2020) ("[The plaintiff] fails to allege a violation of a federal or constitutional right, and as such, the § 1983 claims are dismissed.").

Accordingly, Count One of the SAC is dismissed without prejudice.

### 2. *Violation of Due Process (Count Three)*

Plaintiff next asserts that Rolle, Jr., Ramcharan, and Brooks violated his due process rights under the Fourteenth Amendment by holding a meeting without Plaintiff present. According to Plaintiff, Defendants' participation in this "illegal meeting"—which occurred just before Plaintiff received notice that he was banned from all Trenton Board of Education Buildings—deprived Plaintiff of the right to raise his child. (ECF No. 15 ¶¶ 51-53.) Defendants argue that this claim fails because Plaintiff has not set forth which of his rights were infringed, and how those rights were infringed. (ECF No. 16-1 at 8, 10.) The Court agrees that Plaintiff has failed to plausibly allege that his due process rights were violated.

Courts have held that "[t]he right of parents to raise their children without undue state interference is well established." *See Gruenke v. Seip*, 225 F.3d 290, 303 (3d Cir. 2000) (collecting cases). Moreover, the Third Circuit has held that "[i]t has long been recognized that parents have a constitutional right to control the education of their children." *Luo v. Owen J. Roberts Sch. Dist.*,

12

Civ. No. 22-1632, 2023 WL 5600965, at *5 (3d Cir. Aug. 30, 2023). But such a right is "neither absolute nor unqualified." *Id.*

Liberally construed, the SAC asserts that Defendants deprived Plaintiff of his right to be on school grounds without affording him due process. However, the Third Circuit has declined to find that such a right exists. *See Cole v. Montague Bd. of Educ.*, 145 F. App'x 760, 762 (3d Cir. 2005) ("As to the claim that the School Board violated the [plaintiffs'] due process rights by 'illegally' banning them from school property, this contention plainly lacks merit.") (citing *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999)). And other courts to address the issue have found similarly. *See Lovern*, 190 F.3d at 656 ("[The plaintiff's] claims against [the school superintendent] in this case are plainly insubstantial and entirely frivolous. His assertions that school administrators must provide him with boundless access to school property are 'obviously without merit.'") (citation omitted); *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010) ("While parents have a general due process right to direct their children's education without unreasonable interference by the states. . . [the plaintiff] has provided no legal support for the proposition that this right includes the right to access school premises.") (internal citations omitted); *Grim v. Pennsbury Sch. Dist.*, Civ. No. 14-04217, 2015 WL 1312482, at *13 (E.D. Pa. Mar. 24, 2015) ("While this Court has found no binding authority in this Circuit regarding whether a parent has a constitutional right to access school property, a number of courts have answered the question in the negative.") (collecting cases). Thus, the Court finds that Plaintiff has not plausibly alleged that his due process rights were violated.

Accordingly, Count Three of the SAC is dismissed without prejudice.

### 3.    *Violation of First Amendment (Count Four)*

Plaintiff next alleges that Defendants violated his First Amendment rights by "unduly preferring non-religion over religion and interfering with [his] right to peaceably assemble for

13

religious purposes." (ECF No. 15 ¶¶ 55-57.) Defendants argue that Plaintiff's First Amendment claim should be dismissed because Plaintiff fails to identify how his rights were violated. (ECF No. 18 at 2-3.) The Court agrees that Plaintiff has not plausibly alleged a violation of his First Amendment rights.

The United States Supreme Court has "recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, . . . and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). "This right is particularly important to protect the speech rights of those who espouse views that are unpopular with the majority of their fellow citizens." *Grove v. City of York, PA*, Civ. No. 05-02205, 2007 WL 465568, at *12 (M.D. Pa. Jan. 10, 2007). The right to freedom of assembly guarantees "the right of access to places traditionally open to the public for the purpose of exercising other First Amendment rights." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067 (3d Cir. 1984). But this right is not without restrictions; "[t]he rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." *Cox v. Louisiana,* 379 U.S. 536, 554 (1965). To violate a plaintiff's right to freedom of assembly, "the government must 'directly and substantially interfere' with the [p]laintiffs' ability to freely associate." *B.P. by & through L.P. v. N. Allegheny Sch. Dist.*, 579 F. Supp. 3d 713, 730 (W.D. Pa. 2022) (quoting *Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 485 U.S. 360, 366 (1988)).

To support his First Amendment claim, Plaintiff alleges that after picking his son up from school early two Fridays in a row for prayer and submitting a letter to the school seeking a religious exemption, he was turned away by security the next Friday. (ECF No. 15 ¶¶ 4-10.) Plaintiff also alleges that Ramcharan told Plaintiff that his son could pray at school because two-and-a-half hours

14

once per week was too much time for Plaintiff's son to miss. (*Id.* ¶ 11.)  Plaintiff was banned from school grounds shortly afterwards. (*Id.* ¶ 38.)  Even accepting these allegations as true, Plaintiff does not plausibly allege that Defendants violated his First Amendment rights.  Plaintiff fails to allege how the inability to remove his son from school impacts Plaintiff's right to assemble and to exercise his religious rights.  When "[the p]laintiffs' [c]omplaint contains no allegations of how [the d]efendants directly and substantially harmed their rights to free association, [the p]laintiffs' claim that [defendant] violated their right to free association fails." *B.P. by & through L.P.*, 579 F. Supp. 3d at 730 (granting motion to dismiss on plaintiff's freedom of assembly claim brought under § 1983).  Even viewing the allegations in the light most favorable to Plaintiff, the Court cannot infer that Plaintiff's First Amendment rights were violated by Defendants' actions.

Moreover, there is no suggestion that Defendants acted to suppress Plaintiff's religious views or ideas.  *See Tracy Stephens v. Newey*, Civ. No. 21-00152, 2022 WL 16570863, at *6 (D. Utah Nov. 1, 2022) (dismissing freedom of assembly claim brought by students who refused to abide by COVID-19 mitigation requirements, noting that the plaintiffs had "not pleaded facts that allow for the plausible inference that the policies are related to idea-suppression.")  As a result, the Court finds that Plaintiff does not plausibly allege a First Amendment freedom of assembly violation.[7]

---

[7]    Plaintiff's First Amendment claim also fails if construed under the free exercise clause of the First Amendment.  "The Religion Clauses of the First Amendment prevent the government from making any law respecting the establishment of religion or prohibiting the free exercise thereof." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313 (2000).  Thus, the Third Circuit has noted that the "First Amendment is a shield that prohibits the state from interfering with a person's right to worship as he or she pleases." *Am. C.L. Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1481 (3d Cir. 1996).  And "[g]overnment schools, like all government institutions, may not place unconstitutional burdens on religious exercise." *Mahmoud v. Taylor*, 606 U.S. 522, 545 (2025).  However, "the First Amendment is only implicated if the governmental burden on religion is 'substantial,' which essentially means that the state may not compel an individual to act contrary to his religious beliefs." *Harris v. Holmes*, Civ. No. 14-460,

Accordingly, Count Four of the SAC is dismissed without prejudice.

### B.    Tort Claims (Counts Two, Six, Seven, and Eight)

Defendants argue that Plaintiff's tort claims—for gross negligence, defamation, intentional interference with contractual relations, and intentional infliction of emotional distress—must be dismissed because Plaintiff has failed to comply with the notice requirements of the New Jersey Tort Claims Act (NJTCA).  (ECF No. 16-1 at 11-13.)  The Court agrees.

"Before filing a tort action against a public entity or public employee, a potential plaintiff must comply with the notice of claim requirements laid out in the NJTCA."  *Scott v. N.J. State Police*, Civ. No. 14-4553, 2015 WL 4393474, at *2 (D.N.J. July 16, 2015) (citing N.J. Stat. Ann. § 59:8-3).  "Failure to meet the ninety-day deadline for service of a Tort Claims Act notice of claim ordinarily results in a severe penalty: '[t]he claimant shall be forever barred from recovering against [the] public entity.'"  *McDade v. Siazon*, 32 A.3d 1122, 1130 (N.J. 2011) (alteration in original) (quoting N.J. Stat. Ann. § 59:8-8).  The plaintiff "bears the burden of proving that the claim was filed with the appropriate public entity."  *Rolax v. Whitman*, 175 F. Supp. 2d 720, 730 (D.N.J. 2001), *aff'd*, 53 F. App'x 635 (3d Cir. 2002) (citing *Hammond v. City of Paterson*, 368 A.2d 373 (N.J. Super. Ct. App. Div. 1976)).

Here, Plaintiff has not attached an NJTCA notice of claim to his SAC, nor does he allege that he filed a claim notice.  (*See generally* ECF No. 15.)  Moreover, Plaintiff did not respond to Defendants' Motion to Dismiss to assert that he filed the required NJTCA notice.  As a result, Plaintiff's tort claims fail.  *Glover v. City of Jersey City*, Civ. No. 11-5731, 2012 WL 2086476, at

---

2019 WL 291147, at *6 (D.N.J. Jan. 23, 2019).  "The Supreme Court has defined a 'substantial burden' as one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Id.* (quoting *Thomas v. Review Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981)).  Here, Plaintiff has pled no facts upon which the Court could infer that Plaintiff's religious rights were substantially burdened based on his inability to pick up his son from school on two occasions.

*9 (D.N.J. June 7, 2012) (dismissing tort claims where the plaintiff did "not allege that he ha[d] complied with the relevant provisions of the [NJTCA]"); *Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL 277600, at *1 (D.N.J. Jan. 18, 2019) ("[T]he [c]omplaint's tort claims are dismissed in their entirety . . . because the plaintiffs have failed to file a notice of tort claim under the [NJTCA].").

Accordingly, Plaintiff's claims for gross negligence (Count Two), defamation (Count Six), intentional interference with contractual relations (Count Seven), and intentional infliction of emotional distress (Count Eight) are dismissed without prejudice.

### C.    Retaliation (Count Five)

Plaintiff asserts a claim for retaliation, alleging that Defendants "engaged in retaliatory conduct meant to punish" him for filing a lawsuit against Ramcharan.  (ECF No. 15 ¶¶ 59-61.) Among other things, Plaintiff alleges that Defendants banned him from entering all Trenton Board of Education buildings.  (*Id.*)  Plaintiff does not state what law provides the basis for his claim. (*Id.*)  New Jersey does not appear to recognize a common law claim for retaliation.[8]  However, the New Jersey Law Against Discrimination (NJLAD) does "make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful" by NJLAD.[9]  *Cottrell v. J & R Disc. Liquor Gallery, Inc.*, Civ. No. 08-5418, 2009 WL 1085729, at *4 (D.N.J. Apr. 21, 2009) (citing N.J. Stat. Ann. § 10:5-12(d), (e)).

---

[8]    *Cf. Kalksma v. Konica Minolta Bus. Sols. U.S.A., Inc.*, Civ. No. 10-2829, 2011 WL 3703471, at *8 n.16 (D.N.J. Aug. 22, 2011) (noting that the parties disputed the existence of a common law cause of action for retaliation under New Jersey law, and that the plaintiff failed to point to any authority suggesting such a cause of action existed).

[9]    NJLAD provides that "[i]t shall be . . . an unlawful discrimination . . . [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . . or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, . . . any right granted or protected by this act." N.J. Stat. Ann. § 10:5-12(d); *see also In re Est. of Jameson*,

To make out a *prima facie* case of retaliation under NJLAD, "a plaintiff must show that: (1) []he engaged in protected activity; (2) []he suffered an adverse [] action; and (3) there was a causal connection between the protected activity and the adverse action." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 546 (D.N.J. 2022).  A plaintiff engages in protected activity "'when that person opposes any practice rendered unlawful under the [NJ]LAD.'" *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (quoting *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. App. Div. 2005)).  Protected activity includes "some sort of complaint that [the plaintiff's] rights under the NJLAD had been violated." *Allia v. Target Corp.*, Civ. No. 07-4130, 2010 WL 1050043, at *9 (D.N.J. Mar. 17, 2010).  In addition to "instituting lawsuits, filing affirmative action complaints, and participating in litigation, other examples of protected activity are 'making complaints to management,' 'writing critical letters,' [and] 'protesting against discrimination[.]'" *Id.* (citing *Montanye v. Wissahickon Sch. Dist.,* 218 F. App'x 126, 131 (3d Cir. 2007)).  Although the plaintiff's opposition need not be formal, it "must clearly indicate a belief that an act forbidden by the NJLAD has occurred." *Greco v. T-Mobile, USA*, Civ. No. 09-967, 2010 WL 4981264, at *12 (D.N.J. Dec. 1, 2010) (quoting *Hood v. Pfizer,* Civ. No. 04-3836, 2007 WL 2892687, *19 (D.N.J. 2007) *aff'd* 322 F. App'x 124, 130 (3d Cir. 2009)).

Even drawing all inferences in favor of Plaintiff, the SAC does not address the elements of a retaliation claim under NJLAD.  While Plaintiff does allege he complained to "the Department

2016 WL 4249142, at *6 (N.J. Super. Ct. App. Div. Aug. 12, 2016) ("The NJLAD reflects a strong and clear public policy against religious and other forms of discrimination.").

While NJLAD retaliation claims are often brought in the employment context, the law "[is] not limited to employer/employee relationships." *J & R Disc. Liquor Gallery, Inc.*, 2009 WL 1085729 at 4 n.6; *see also Cottrell v. Rowan Univ.*, Civ. No. 08-1171, 2009 WL 10728000, at *4 (D.N.J. May 22, 2009) (holding that NJLAD prohibitions against unlawful retaliation "extend beyond the employment context and make it unlawful to retaliate against an individual because he or she opposed any act or practice made unlawful by. . . NJLAD").

of Education @ email address – school.ethics@doe.nj.gov" on September 20 and filed a civil

lawsuit against Ramcharan in state court on September 23[10]—prior to Plaintiff's ban from all

Trenton Board of Education buildings on September 27—Plaintiff does not allege any facts

regarding the substance of those complaints.  (*Id.* ¶¶ 12, 38.)  As such, the Court cannot determine

whether Plaintiff was opposing a practice rendered unlawful by NJLAD to have engaged in

protected activity.  *See Greco*, 2010 WL 4981264, at *12.  Therefore, Count Five of the SAC is

dismissed without prejudice.

### D.  Energy Reorganization Act (Count Nine)

Finally, Defendants argue that Plaintiff's claim for sex discrimination under 42 U.S.C.

§ 5891 must be dismissed because this statute contains no private right of action.  (ECF No. 16-1

at 13.)  The Court agrees that dismissal of this claim is appropriate.

Section 5891 was enacted by Congress as part of the Energy Reorganization Act of 1974

(ERA).  *See Adams v. Dole*, 927 F.2d 771, 775 (4th Cir. 1991).  The ERA "abolished the Atomic

Energy Commission and transferred its licensing and regulatory functions to the [Nuclear

Regulatory Commission]."  *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1241

(10th Cir. 2004).  "Among the many goals of this legislation, Congress intended to promote nuclear

safety by encouraging employees at nuclear power facilities to report any safety violations to the

---

[10]    Defendants argue that Plaintiff has failed to state a claim for retaliation under NJLAD because "[t]he lawsuit Plaintiff filed against Principal Ramcharan was a claim pursuant to the New Jersey School Ethics Act [(NJSEA)] and not a discrimination complaint" and thus cannot constitute protected activity to make out a *prima facie* case under NJLAD.  (ECF No. 16-1 at 9-10.)  As Plaintiff's complaint to "the Department of Education" and his initial state court complaint filed against Ramcharan do not appear to be in the record, the Court cannot evaluate whether Plaintiff complained under the NJSEA or otherwise.  However, the Court does note that when assessing protected activity under NJLAD, it is not the *form* of a plaintiff's opposition that is relevant but rather its content, and whether that opposition alleges that plaintiff's rights under the NJLAD were violated.  *See Allia*, 2010 WL 1050043, at *9; *Greco*, 2010 WL 4981264, at *12.

Nuclear Regulatory Commission." *Carolina Power & Light Co. v. U.S. Dep't of Lab.*, 43 F.3d 912, 913 (4th Cir. 1995).

Section 5891 provides as follows:

> No person shall on the ground of sex be excluded from participation in, be denied a license under, be denied the benefits of, or be subjected to discrimination under any program or activity carried on or receiving Federal assistance under any subchapter of this chapter. This provision will be enforced through agency provisions and rules similar to those already established, with respect to racial and other discrimination, under Title VI of the Civil Rights Act of 1964. However, this remedy is not exclusive and will not prejudice or cut off any other legal remedies available to a discriminatee.

42 U.S.C. § 5891.

At least one district court has held that Section 5891 does not create a private right of action. *See Geiling v. Hemlock Semiconductor Corp.*, Civ. No. 12-13119, 2012 WL 5265551, at *9 (E.D. Mich. Oct. 23, 2012). Regardless, even if this Court found that Section 5981 did create a private right of action, the SAC contains no facts upon which this Court could infer that Section 5891 applies here. *See Garza v. City of Tulare*, Civ. No. 08-437, 2009 WL 674270, at *8 (E.D. Cal. Mar. 6, 2009) (dismissing *pro se* plaintiff's claim under Section 5891, reasoning that "there are no allegations whatsoever from which such a claim may be inferred, especially any allegation that the City has been licensed by the [Nuclear Regulatory Commission] for industrial or commercial uses of atomic energy"). Indeed, Plaintiff does not allege any facts to suggest that Section 5891 applies to his claims (*e.g.*, that he was denied a license to participate in the atomic energy industry on account of his sex).

20

Accordingly, Plaintiff's claim for sex discrimination under Section 5891 (Count Nine) is dismissed with prejudice.[11]

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED**.  Count Nine is dismissed with prejudice, and the remaining claims are dismissed without prejudice.  Plaintiff will be granted leave to file an amended complaint within thirty days to the extent he can cure the deficiencies outline herein.  An appropriate Order follows.

Dated: March 6, 2026

_____

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

[11]    The Court finds that amendment of this claim would be futile, so dismissal with prejudice is appropriate. *See, e.g.*, *Franklin v. Fin. Freedom Acquisition, LLC*, Civ. No. 12-7884, 2014 WL 1316093, at *6 (D.N.J. Apr. 1, 2014).

21